Good morning, your honors. My name is Saad Ahmed and I represent the petitioner in this case. The petitioner in this case is a native and citizen of India and he seeks review of the board's final order of removal in which the board affirmed the immigration judge's decision to deny the petitioner's motion to terminate removal proceedings. The board concluded that the district director of the CIS was authorized under the statute to deny the petitioner's application for conditional residence status after 90 days. This case presents a question of pure statutory interpretation. The question is whether Section 216C3A of the Immigration and Nationality Act is a jurisdictional stripping statute. And the answer to this question is that if you look at the plain language of the statute and the structure of the statute, this statute is mandatory. Congress intended this 90-day deadline to be mandatory, meaning that district director must adjudicate an application for conditional residence status within 90 days of the initial interview or the person acquires lawful residence status. But that depends upon how one interprets the term the hearing, correct? Yes. And we talk about the hearing, the trial. We often adjourn proceedings and resume them later. And isn't, number one. Number two, isn't it in the – for the benefit of the petitioners to have hearings adjourned and resumed, particularly in this case when they were given – he was given an opportunity to produce evidence to rebut the tentative conclusion that he was a participant in a sham marriage? Your Honor, first of all, to answer the first part of your question, for example, in naturalization context, the courts have said that the naturalization interview, the examination when the person is interviewed, it qualifies as the date of the interview for purposes of the 120-day deadline, which, you know, which allows an applicant for naturalization to seek review in district court. We believe the same applies here. The interview, the term interview, initial interview means, means, I mean, the plain language of the term interview means when a person is interviewed by a CIS officer or district director. I believe it says the hearing, doesn't it? Is that the proper term, the correct term in the statute? No, Your Honor. It says the initial interview. The initial interview. I'm sorry. The interview. The word initial isn't there, is it? Yes. Yes, that's correct. I'm sorry. I don't suggest that it is. If the word were there, the case would be easy. The word's not there. The case isn't so easy. Yes. It's not that easy, but we believe that the term interview means when a person is interviewed. Why? The reason for that being is that if the term interviewed is interpreted two different ways, then there would not be any limitations on how many interviews the CIS could have before adjudicating an I-751 application. I think you have to look at this case in the context of the whole, I mean, the structure of the INA. It's quite clear that when Congress wanted to waive deadlines for adjudicating the petitions, it did so explicitly. In this case, Congress did not want these deadlines to be mandatory, this 90-deadline because the statute did not provide a limitation as it does in other cases. I'm kind of waiting for an answer to Judge Carr's question. I don't understand the logic of either why it wouldn't actually benefit the applicant to be able to take more time to respond to questions and generate perhaps satisfactory responses in the context of what in this case appears to be a sham marriage, and hence marriage fraud, and marriage fraud really isn't an issue now. And nor do I understand the logic of why it is Congress would set a ticking clock and would say in effect that now DHS can't do anything more about a sham marriage if the clock has run out and we should disregard all the immigration laws and make that the result if an answer isn't given within 90 days. I don't understand the logic of either of those. First, the time limitation question. I think the time limitation can help, but in this case, the DHS had over 18 months in which to investigate the merits of the marriage. In fact, by the time the interview was over. Was your client disadvantaged by that? Excuse me? Was your client disadvantaged by that? I think he was to a certain – well, he was to a certain extent because oftentimes marriages deteriorate, oftentimes things don't work out. And Congress, you know, does realize that that's why it provides for waivers of some of these marriage grounds. I think in this case what Congress wanted was not only to protect the integrity of the immigration laws of this country, but it also wanted adjudications of these applications to be done in a timely manner. Otherwise – What would have happened if all the – all they had before them was what they had at the time of the interview, the first interview? What would have happened to your client? I think in this case, they wanted more evidence, and the Petitioner did provide more evidence. And in fact, he provided it in a timely manner. The problem here is that the district director – It was evidence that was favorable to him, but despite that additional evidence, they still concluded that it was a sham marriage, which suggests that the evidence they originally had would have been sufficient, and your Petitioner would have been out of luck without the opportunity to come back and say, time out, folks, wait a minute, it looks that way. I haven't lived with my wife in Reno for but a month, but after all, I got this wonderful job. I go home every weekend. Here's, you know, theater stubs or airline tickets or whatever. This is a real deal. I think in this case, the sham marriage determination was made because the Petitioner requested the interview – the second interview to be rescheduled. It was not determined, you know, we believe, at the time of the first interview. At the time of the first interview in December of 2004, the Petitioner – I mean, the CIS officer who interviewed the Petitioner and his wife told the Petitioner and his wife that we need more evidence, but that's all we need. We don't need you. So we believe that the marriage fraud determination was made because the Petitioner wanted to reschedule. And that's our argument as well. Now, shouldn't the Petitioner have the burden of saying, hey, wait a minute. The clock is running and the 90 days is about to be up. Please make a decision. Why shouldn't he have that burden enforced? If that's, quote, a right that he has that gives him, in effect, a free ticket to remain in this country, why shouldn't he have some minimal burden to raise his hand and say, folks, I need a decision. The 90 days is up. Well, I think that the Petitioner was patient enough to begin with in this case, or any patient. I mean, when the initial interview was scheduled more than 18 months after the application was filed, that's a pretty reasonable amount of time for which, like in which the district director could make a decision on. Well, if it's a real marriage, it's a time in which it's likely to become solidified. And, you know, if they had these hearings the week after the honeymoon, it would be a lot more difficult for somebody in the Petitioner's position to prove that this was a bona fide marriage or to establish it was a bona fide marriage. Well, that's true. But I think two years of conditional resident status is ample time in which a person can demonstrate that the marriage was bona fide. I would like to point out one thing also, is that it's not in the briefs, but recently the Board made a decision, decided a case called Matter of Herrera del Orden. In this case, the Board said that the immigration judge in removal proceedings has very broad authority in which to review a denial of a CIS's decision to terminate status, conditional resident status. This issue is very important because this is the first time the Board made a decision as to the IJ's authority. So if someone claims that his due process rights were violated like the Petitioner in this case did because he was not given ample time to provide the evidence, now under this new case law, he can seek review at the IJ, I mean, in immigration court. And this is very important in this case because I believe that the Petitioner's counsel in immigration court decided to challenge this case on jurisdictional ground because he felt that the review by the IJ was more like the review at the appellate level where you defer to the factual findings of the district director and not bring new evidence. And also, so I believe that's why he brought this jurisdictional argument to fight it, because he felt that if the district director did not terminate the case properly, he was prejudiced if he sought review. And the Board clarified this. So I believe that the Court should look at this issue. It would have almost been a waiver of the jurisdictional argument. Excuse me? It almost would have been a waiver of the jurisdictional argument to raise the merits issue. Yes. Yes, Your Honor. Exactly. Your time has expired. Yes. One thing, when you raise a new case, you can give the case citation to the clerk. She'll give you a form, and then that will get it to us. All right? Thank you, Your Honor. Thank you. Thank you. We'll hear from the government. Good morning, Your Honor. If I may, could you tell me what's the answer to the concern that these proceedings may simply be continued and continued, adjourned and adjourned indefinitely to the detriment of Petitioners? Well, I think what Your Honor was getting at, all of Your Honors, what your questions were getting at was that this needs to be a practical process. There is a marriage. There are facts to be established that establish that marriage, its validity, things like, you know, phone bills, cable bills, rent statements or mortgage payments, what have you. And that all takes time. And, yes, there is clearly an intent in the statute that the decisions be rendered timely. But, however, the statutory arguments here fail for two critical reasons. First, as Your Honors were suggesting, the 90-day clock didn't start to run for that decision as of the initial interview, because as Judge Thomas pointed out, the word initial isn't there. It is the interview. Judge Clifton pointed out. I'm sorry. I was thinking it hard. And we're fungible at some point. Maybe I saw you nod, Your Honor. I apologize. Yeah. In any event, that did not start to run because, as was suggested, that there was It wasn't the end. It was clear after the initial interview that that was not going to be the end of the proceedings. So the government's position is that the clock starts to run at the conclusion of the last hearing or interview, you should say? Correct. All right. So what happens if a decision is not rendered within 90 days from that point, in your view? Well, the board clarified the consequences of that in matter of, and I'm going to mispronounce this, NWACOMA. It's cited in the briefs. The board cited it in this case. And that's a 20 INM decision, 899, 1994 published board case, talking about this precise statute and how the 90-day requirement, yes, it's there, but it's not mandatory. And also that case itself cited Brock v. Pierce, which the Supreme Court stated it's the great principle of public policy applicable to all governments alike, which forbids that the public interest should be prejudiced by the negligence of the officers or agents to whose care they are confided. Meaning, yes, they need to act and they need to do something. But if they fail to do so and there's no consequence specified for it, there's no consequence that can be manufactured thereafter. So at the end of the day, the 90-day mandatory period set by Congress is just aspirational? I mean, that's the struggle we have. I mean, assume Congress meant what it said. It is. This is very true. However, this Court recognized Brock and provided a 28-day letter citing United States v. Hovstepian, which cites Brock, which states that if it's the exact principle stated in Brock, that if the statute provides a deadline but does not provide a consequence for failing to meet it, then that jurisdiction remains. And, yes, that is mandatory language in the statute. But isn't there a remedy when an official fails to perform a mandatory duty, namely mandamus? Isn't that the answer to his suggestion that otherwise these things are going to go on indefinitely? I mean, I don't know. I'm actually asking the question because I don't as a district judge, I don't handle these cases. But I assume that mandamus, you could file a mandamus petition here to compel the official to act. I don't want to speak beyond my authority to say that that is an acceptable remedy, but that is a logical option, I would think. I've seen mandamus actions. Actually, the government's taken the position in some cases that we don't have jurisdiction over that. That's why I hesitate. No, I appreciate your candor, but it's a tough, tough issue when Congress says here's a condition, doesn't specify a consequence, and then the agency doesn't meet the deadline. If the shoe's on the other foot, as you know, the government usually takes the position that the petitioner is out. I mean, there's no relief is denied. And that's precisely the case here, which is what the board discussed in Mater Nocuma, that there's a consequence for the alien if the alien fails to file within that 90-day window. It's within the two years, but it's 90 days before the two-year anniversary, which is contemplating that there is some time to establish the marriage and to gather facts and evidence to prove that your marriage is indeed valid. But there's a consequence for failing to file that petition or move the conditions, whereas Congress did not specify a consequence for CIS's failure to address the petition in a timely manner. Nonetheless, again, if the Court doesn't want to go to that point, it can simply agree that the 90-day clock didn't start to run as of the initial interview, because the statute doesn't say the initial interview. It says the interview. And so it's a question of what that means. There's also the question of whether or not you're going to file. Kennedy. Well, then, if mandamus is not available to the petitioner, and I can also see reasons why it might not be within the context of a deadline, what remedy is there if it gets continued and continued? And candidly, we're looking at government-wide serious budget cuts, so the stresses upon agencies like this, which I assume are underfunded anyway and overwhelmed, are going to be even greater. But what protection for petitioners is there against the prospect of endorsing what happened here and thereby inviting frequent or regular postponements? Right. The problem with that logic is that it assumes that there's a negative consequence. I mean, yes, they're waiting for a final determination on their status. But nonetheless, they're allowed to be legally present in this country. They have conditional permanent residence status until a decision is made. They're not subject to removal at that point. They've not been ordered removed, so they're really under no immediate danger. But what about a situation where somebody, let's say, has a job opportunity elsewhere in the country, and his employer, prospective employer, simply wants to know what's the deal? Sure. Are you going to get to stay? I mean, I think that at least there are practical consequences to delay in terms of people who are legitimately married living in a state of limbo and uncertainty. Certainly. But as the critical phrase, Your Honor, or word, Your Honor, used there was practical. This is an agency that is dealing with thousands of these cases, and it has to be given the opportunity to deal with these things in a practical manner. And if that situation were to arise where an individual needs some kind of expedited adjudication, they're certainly well within their rights to make that request. They can certainly send a letter. Raise their hand and say, hey, come on now. I've got a situation. Please. Precisely, Your Honor. And potentially, we're speculating, of course, that that might be effective. Exactly. And what happened here in terms of him failing to appear for the subsequent interview, that was pretty much his own making. He sent he received notice of the interview about eight days prior to it taking place, and then two days prior to the interview, his counsel, he was represented at that stage as well. His counsel sends a letter to CIS requesting that the entire proceedings start over, essentially in another jurisdiction. There's nothing in the record to explain why they didn't show up, even though they hadn't heard anything necessarily, which would be impractical, again, to expect a response within two days from CIS on that. But also no indication that counsel called the court to say we're not coming or that they made any effort to appear at all. So that can't necessarily manufacture this kind of great concern about how these proceedings went. He had his opportunity to present evidence. They had their first shot. They were asked to give more. That still wasn't enough. And ultimately, they Mr. Chettiar engaged in marriage fraud, and he's never contested the merits of that, despite being given several opportunities before the immigration judge to do so. He simply just never took that opportunity. The Court doesn't have any. Also, with respect to the subsequent cited authority, I have not seen that myself. I'm not sure if it's published or not or what precedential value it has. If we think there's a need for a supplemental briefing, we'll give you the opportunity. I appreciate that. You can also file a 20HA letter if you want to respond to that. I appreciate that, Your Honor. One last point before I forget as well. The matter of Naquoma, again, as a published decision, and that reminded me of whether or not that's a published decision, is as a published decision is entitled to Chevron deference to the extent that the agency relied on it here. While this is an unpublished board case, that's a published board decision interpreting a silence statute, essentially the silence being the consequences of failure to comply with the 90-day requirement. Thank you. Thank you for your argument. You used up your time in your first presentation, but if you want to use one minute for rebuttal, we'll give that to you. No, Your Honor. Okay. Thank you very much. I think the issues were well presented and framed for us. So thank you both for your arguments. The case just heard will be submitted for decision.
judges: Carr, Thomas, Clifton